United States District Court
Southern District of Texas

**ENTERED**

December 10, 2025

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:25-CV-00368 |
| | § | |
| INNOVO MANAGEMENT LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM AND ORDER

### I.  INTRODUCTION

Before the Court are the defendants[1] motion to dismiss the plaintiffs'[2] first Amended Complaint [DE 26], the plaintiffs' opposition [DE 33], the defendants' reply [DE 34], and the plaintiffs' sur-reply [DE 39].  The Court has reviewed the documents, pleadings and the applicable law, and determines that the defendants' motion to dismiss should be granted.

### II.  FACTUAL BACKGROUND

Plaintiffs in this case consists of related Insurance "conglomerates" that provide automobile insurance coverage to individual customers.  For purposes of this case, they will be referred to as the Insureds.  The defendants are individuals and entities that provide medical care to Insureds as chiropractors and physicians who own and operate their own clinic and rehabilitation center(s) and own or support the entities that provide management services for the practitioners.

---

[1] The plaintiffs have sued several individuals and corporations.  The defendants, the movants in this motion are:  Laura Tran Le, DC; Thao T. Huynh, DC, 59 Pain & Rehabilitation Center, LLC; and, 290 Pain & Rehabilitation, Incorporated.  In this proceeding, they will be referred to as "the defendants".

[2] The plaintiffs are the collective Allstate Insurance Company: Allstate Indemnity Company; Allstate Property & Casualty Insurance Company; and, Allstate County Mutual Insurance Company.  In these proceedings the Allstate entities will be referred to as "the plaintiffs").

The defendants not included in this motion are:  Deepak Sharma resides at 4040 Koehler Street Apt 3023, Houston, Texas 77007. He allegedly controls Innovo Management and HRX also defendants in this case.   Sharma allegedly owns, operates, and controls a website called "caracidentcare.com".  He is not an attorney and does not have a license to practice medicine in Texas.   Nevertheless, he allegedly participates in the operation and management of several defendant entities; 59 Pain, 290 Pain Breeze, MRI and IPS through his various businesses.

The plaintiffs contend that he is also responsible for the fraudulent services rendered to the plaintiffs' Insureds.  Therefore, the plaintiffs allege that he is jointly and severally liable for the payouts that the plaintiffs have made as a result of being wrongfully induced to make payments for the services provided by 59 Pain, 290 Pain, Breeze, MRI, and IPS.

Young An and Robert Casimir are physicians.  They allegedly co-own and manage IPS, a company that provides billing services.  IPS also does business with HRX in that HRX purchases account receivables from medical providers such as IPS.

Ravi Patel owns and manages CXR Investments, LLC, Breeze, and MRI, LLC.  CXR also purchased account receivables from medical providers while Breeze and MRI provide MRI and x-ray services for the Insureds.

III.    THE PLAINTIFFS' CONTENTIONS

In its Amended Complaint and in its response and opposition to the defendants' motion to dismiss, the plaintiffs assert that the defendants have intentionally engaged in a scheme to defraud the plaintiffs by generating false medical records and bills for medical services that they did not provide in relation to injuries that the Insureds allegedly suffered in automobile accidents.

The plaintiffs assert, for example, that the Insureds were represented by Attorney Clyde Moore who submitted false medical records and bills to the plaintiffs that were generated by the

2 / 9

defendants, particularly Huynh and Le, that became part of his settlement demand documents concerning the Insureds that he represented.  These records, the plaintiffs assert, were generated at Le's two clinics, the 59 Pain & Rehabilitation Clinic and the 290 Pain and Rehabilitation.

According to the plaintiffs, the goal of the defendants was to engage in a scheme to defraud the plaintiffs by establishing a "collaborating" group that would work together in order to establish an "ongoing cycle of patient referrals and kickback payments."  In more specific detail concerning the moving defendants, the plaintiffs assert that Huynh and Le worked with Patel and Sharma to, in their words, "propel the scheme through an ongoing cycle of unlawful patient referrals and illegal kickback payments accomplished through IPS, Innovo Management, HRX, CXR, Breeze and MRI."

The plaintiffs also assert that Huynh and Le "entered into sham agreements with IPS and CXR to extract illegal kickback payments disguised as rent payments."  The plaintiffs further claim that Huynh and Le developed a "predetermined fraudulent treatment protocol" for personal injury patients and then used the United States mail to forward the illegal medical bills and records to the Insureds attorney(s).  Allegedly, the protocol permitted the defendants to use "templates containing pre-determined information and, as such, were not tailored to the specific patients' needs.  The results were that the Insureds were "billed for services that were medically unnecessary.

The plaintiffs have identified the following claims as evidence of fraudulent referrals and treatment cycles: J.G. (Claim No. 0450516228); M.A. (Claim No. 0486911571); K.A. (Claim No. 0691178339); M.S. (Claim No. 0362319014); T. N. (Claim No. 0362319014); R.M. (Claim No. 0365400415); J.T. Claim No. 0438899196); E.O. (Claim No. 0438899196); and J.W. (Claim No. 0466179199).  According to the plaintiffs, these Claims represent 6,852 instances where fraudulent charges were billed under CPT Code 97035 at the rate of $55.00 for each service.

In conclusion, the plaintiffs assert causes of action under the Racketeering Influenced and Corrupt Organization Act ("RICO)".  Under this heading, the plaintiffs list fourteen (14) RICO claims consisting of seven claims of participation in a RICO enterprise, and seven claims of RICO conspiracy.  In addition, the plaintiffs alleged claims for state common law fraud, civil conspiracy, money had and received and seek declaratory relief.

## IV.    THE DEFENDANTS' REPLY AND CONTENTIONS

As a general position statement, the defendants assert that the plaintiffs' "72-page" extravagantly worded complaint consists of "boilerplate, conclusory and repetitive allegations, all simply to state that the defendants' medical treatment of the Insureds exceeded the treatment required for the reported injuries suffered.  Therefore, the fact that the defendants created entities or shared control over entities, that were used to conduct their business fail to establish that the organizational structure(s) are the source of the plaintiffs' injuries.  The defendants assert that the plaintiffs' claims of 'fraudulent bills' and 'fraudulent invoices' being forwarded to them by the defendants are not supported by the evidence.  The defendants also describe the plaintiffs' state common law claims as  "boilerplate" and, therefore, inconsequential because there are no facts pled that support reliance, fraud or conspiracy.  Hence, the allegations cannot be connected to the injuries alleged.

With regard to the plaintiffs' claims that the structure of the defendants' entities and the manner of their use violates the standards of the American Medical Association, the Texas Patient Solicitation Act (Tex. Occ. Code § 102.001), the Texas Administrative Code (§ 371.669); and the Texas Stark Law, the defendants response is the same – these alleged violations cannot be traced to the plaintiffs' alleged injuries.

## V.    LAW APPLICABLE TO ISSUES PRESENTED

### A.    *Motion to Dismiss FRCP 12(b)(6)*

Federal Rules of Civil Procedure, hereafter referral to as, [FRCP] Rule 8(a)(2), provides that . . . a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief." However, this lenient stand of pleading cannot withstand the scrutiny of claims subject to FRCP 12(b))(6) and FRCP 9(b). Specifically, FRCP 12(b)(6) dictates that a cause of action or claim be dismissed when the complaint or claim fails to assert facts upon which the complaint or claim rests such that relief may be granted. *See Bell At'l Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

To survive a 12(b)(6) motion to dismiss, the factual allegations must be sufficiently factual to state a claim for relief that is "plausible on its face" and thereby raise a right of relief above speculation. *See Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). This inquiry takes into consideration the elements of each claim. *Id.*

### B.    *Motion to Dismiss FRCP 9(b) Standard for Fraud Assertion*

When considering a motion to dismiss a FRCP 9(b) claim of fraud, the pleadings must undergo the same scrutiny by a court as that applied in a 12(b)(6) setting. FRCP 9(b) places on a complainant the duty to support a fraud claim with sufficient specificity of events and/or facts such that the circumstances allegedly constituting the fraudulent conduct are plainly stated. Hence, a pleading that fails the specificity test, including factual allegations of moral turpitude, must be dismissed. *See Grubbs v. Kanneganti*, 565 F.3d 180, 185-86 (5th Cir. 2009).

C.     *Allegations of RICO Act Violations §§ 1962(c) and (d)*

In this case, the plaintiffs have alleged that the defendants conspired to violate the RICO Act, Title 18 U.S.C. § 1962-64.  In order to establish the elements of a RICO Act violation, the plaintiff must assert specific facts that establish "plausibility" regarding the allegation of conspiracy between and among the individuals and entities.  In addition, in a civil case, irrespective of whether the claim is conspiracy, fraud or tort, the facts must connect the alleged fraudulent conduct to the alleged injury. *See Hemi Group, LLC v. City of New York,* 559 U.S. 1, 2 and 9 (2010).  It is through this prism, not that of a statutory violation, that a plaintiff's allegation(s) of a RICO Act violation or common law claims must be viewed.

## VI.     ANALYSIS AND DISCUSSION

A.     *The Plambeck Decision*

The Court begins its analysis and discussion with the plaintiffs' conspiracy RICO claims. In order to establish that the defendants conspired to violate RICO, the plaintiffs must plead facts and/or circumstances that establish a direct connection between the act and the plaintiffs' injuries. Hence, the injuries must be a direct and proximately cause of the RICO Act violation(s). *Anza v. Ideal Steel Corp.,* 547 U.S. 451, 452 (2006).  In establishing a direct relationship, the seminal question is whether the plaintiff can trace a direct path from the alleged RICO Act violation(s) to their alleged injury.  (*Id.*)

The plaintiffs assert that the proximate cause element for its injury(s) is established by foreseeability.  The plaintiffs were the defendants' intended target for their fraudulent conduct. The plaintiffs argue that the "direct path" element may be satisfied indirectly.  This would mean that the fact that the alleged fraudulent billings passed through an attorney's hands does not matter.

6 / 9

In support of this argument, the plaintiff points to the *Plambeck* case. *See Allstate Ins. Co. v. Plambeck,* 802 F.3d 665 (5th Cir. 2015).

The allegations asserted here in support of the plaintiffs' RICO Act claims are that Allstate paid for certain medical procedures that were medically unnecessary based on the Insureds' injuries. The claims were submitted by the insureds' attorneys and the attorneys forwarded the fraudulent bills to the plaintiffs who, in turn, made settlement offers on behalf of the insureds. The defendants assert that the method of travel of the medical bills to Allstate in the *Plambeck* case is distinguishable from method used here. The defendant points to *Hemi Group LLC,* 559 U.S. at 9 (2010), as the proper precedent for the facts in the case at bar.

In rejecting the *Plambeck* precedent, the defendants point out that the alleged fraudulent act(s) satisfy the "but-for" and proximate cause standards because all of the processes from start to finish were conducted by a non-attorney and/or his organization. Hence, while in house attorneys or paralegal were used by *Plambeck,* he was the manager of the entire process.

The Court is of the opinion that *Plambeck* does not aid the plaintiffs' arguments because the structure that the defendants created in the case at bar places the Insureds' attorney(s) outside the medical providers' structure. Specifically, the plaintiffs do not plead that the attorneys with whom they engaged in settlement discussions with whom they consummated the settlements, worked for owned or supervised the medical teams. Nor do the plaintiffs assert that the attorneys were employed by the owners of the 59 and 290 clinics or the other health care entities. Therefore, the holding in *Plambeck* is inapplicable as the "but for" and proximate cause connections cannot be met. *See Hemi Group LLC,* 559 U.S. at 9; *see also Holmes v. Securities Investor Protection Corporation,* 503 U.S. 258, 268 (1992).

While jurist of the several states may define proximate cause, differently, the classic and acceptable definition requires as component elements "cause in fact and foreseeability". *See Texas Campaign for the Environment v. Partners Dewatering Int'l LLC.,* 485 S.W. 3d 184 (Tex. App. Corpus Christi-Edenburg-2016), *citing* to *Hill v. Heritage Res., Inc.,* 964 S.W.2d 89, 126 (Tex. App. El Paso 1997, *pet. denied).* These cases stand for the proposition that the "cause" required for liability must be direct and unbroken by a new or independent cause, in order for the cause to produce an injury, and without which cause the injury would not have occurred. *Id.*

In the context of their RICO Act and common law fraud claims, the plaintiffs must establish that the alleged racketeering acts and fraudulent conduct were the "but for" cause of the plaintiffs' injuries and hence, the proximate cause of the plaintiffs' injuries. 18 U.S.C. § 1964(c); *Hemi Group, LLC,* 559 U.S. at 9. Therefore, the defendants' misconduct, if any, while it may be said constitutes criminal conduct, that conduct does not cause the plaintiffs' injuries. *See Allstate Indemnity Company, et. al v. Akash Bhagat et. al.,* Civil Action No. 24-CV-2573, (SDTx Dec. 27, 2024),

In this case the plaintiffs negotiated what they apparently believed to be a fair and reasonable settlement with the Insureds attorneys. The settlement resolved the Insureds' claims, interrupting the alleged fraud or wrongdoing on the part of the defendants. The plaintiffs freely engaged in settlement discussion and reached amicable resolutions that they cannot now rethink or recalculate in order to obtain a different outcome. The plaintiffs could have taken the cases to trial, but without coercion, opted not to do so.

The plaintiffs' state law claims do not fair better than the RICO Act claim. The plaintiffs' claims of civil conspiracy, fraud, fraudulent inducement and money had and received require that the plaintiffs establish that the defendants engaged in fraudulent acts and that those acts were the

proximate cause of plaintiffs' injuries. They were not. *See Texas Campaign for the Environment,* 485 S.W. 3d 184. *See also* Hill, 964 S.W.2d at 126. Therefore, the Court holds that the plaintiffs cannot overcome or sidestep their own participation in settling the claims when, at the time, they happily did so.

It is ORDERED that the defendants' motion to dismiss the plaintiffs' Amended Complaint is Granted with prejudice.

It is so ORDERED.

SIGNED on December 10, 2025, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge

9 / 9